You may proceed. Thank you, Your Honor. Good morning. May it please the Court. Vitaly Kirchhen, present for Mr. David Niles, the appellant on this matter. I'd like to reserve three minutes for rebuttal, please. The Court shall reverse the District Court's dismissal of Mr. Niles' Second Amendment claim. The claim is not subject to the Ruker-Feldman Doctrine because Mr. Niles does not challenge the protection order itself, but rather challenges only the applicability of state and federal firearm statutes. Furthermore, the Court should also reach the question of whether the Supreme Court's Rahimi decision is dispositive of Mr. Niles' claim and hold that it is not dispositive. So the primary reason why we're here today is the Ruker-Feldman Doctrine because that was the basis for dismissal in the District Court. In order for the Ruker-Feldman Doctrine to apply, there needs to be two things. One, there needs to be a state loser in federal court. The state loser needs to allege that the state court committed legal error or errors, and actually I guess there's three things, and the federal plaintiff must request relief from the state court judgment. We're not doing any of those things in this case. This case presents the question to the federal courts of does the Second Amendment tolerate the imposition of a permanent firearm prohibition under G-8 and other state laws in the context of a protection order? And in order to answer that question, the federal courts need to consider the historical analog framework that set forth by the Supreme Court in Bruin. Let me just go back to the state court order. So what is the harm that you're alleging that does not arise from the state court's judicial decision? The harm arises because there are statutes on the books that are enforced by the respondents in this case. Well, we'll come to that in terms of the Attorney General in a minute, but with respect to the judicial decision, which is the state court protective order, the harm that you're claiming is that the protective order imposes the disarmament, right? That is not the harm, that is not the injury we're pinpointing. Of course the protection, of course the injury wouldn't exist without the protection order. I understand that concept and that there is a relationship there, but ultimately the injury, which is the firearm prohibition, does not flow from the protection order. It flows from the automatic application of the statutes. And typically in a lot of these kind of cases you see a facial challenge, but you've made it very clear that this is an as-applied challenge. So distinguishing a little bit from this Mithroth case, why did you bring this as an as-applied challenge? Because the order is permanent and that is significantly different from, well, if we brought a facial challenge we'd lose. Rahimi is directly on point that the case is, that G8 survives a facial challenge. But in that case that was truly a temporary order because in that particular instance, Mr. Rahimi, it was subject to a protection order for two years after release from prison. So the court, although duration was not really a central issue in Rahimi, the court in passing referred to the two-year period as temporary, at least to consider it temporary. But I read your complaint. I thought you were challenging the state statute on its face. No. No? No. So you're saying the state statute is applied here by the Superior Court? No, as enforced by the... As enforced by whom? As enforced by the Attorney General of the United States as the Chief Law Enforcement Officer of the United States for the federal statute and by the Attorney General of the Washington state, which is the Chief Criminal Enforcement for... Oh, but the Washington... If you read the Washington Attorney General's authority, it's really a county authority. It's the State Attorney General has kind of subsidiary authority if the county decides not to use it. But I don't really see the state, and this wasn't really, I think, well-briefed, but I don't really see the State Attorney General's authority to enforce the statute. If your client violates the order, then the Superior Court holds contempt proceedings or some kind of proceedings, the State Attorney General doesn't enforce it, right? Not in that context, Your Honor, but we are challenging the constitutionality of the state statute, and that is within the purview of the state... Oh, that's different than I thought you just answered to Judge Paez. So you're challenging the state? We're challenging the state laws and the federal laws. So let's kind of separate those. Under the Second Amendment. So the state law you're challenging as being unconstitutional under Bruin, Rahimi, whomever. Sure. Okay. Second Amendment. As I read this, I'm looking at your complaint. It's a short complaint. Sure. Didn't say much. Says what it needs to. Doesn't even look... Well, I don't want to get into that, but paragraph 11 says, therefore, 18 U.S.C. section 922 G8, Washington Revised Code section 9.41.0402a little 2, and Washington Revised Code 9.41.800 must be invalidated as they apply to Mr. Niles. Sure. So it's not a facial challenge? No. No? No. We'd lose a facial challenge. I'll admit that. If the protection order had been issued for one or two years, we couldn't be here. Rahimi's already taken care of that. Let me go back then to the procedure, and this obviously doesn't necessarily bear on Rooker-Feldman. It may bear on the merits, but in the Superior Court, you made a Second Amendment challenge, correct? We filed a Second Amendment challenge on the revision to the duration statute, yes. Right. Okay. So Second Amendment was aired out there. You did not appeal that to the Court of Appeal, correct? Correct. So that order remains in place? The protection order is absolutely in place right now, yeah. And has the appeal period run for that order? Many years ago. Okay. That's what I thought. But I take it that in a given year, you can go back in and ask for revision? The statute does not allow for revision. The revision's a 10-year, I'm sorry, a 10-day period of time. So we've burned through a revision, and we've burned through all the pellet deadlines. But what about the authority that allows you to go back, I think, every year to say something's changed? Right, every year. Sure. Yes, sir. I was getting to that. So there is a statute that allows, not for revision necessarily, but for modification or termination. Modification. That is how the statute is written. Okay. So the word is modification, not revision. Yes. Okay. Thank you. But you have to make a showing of, what, changed circumstances or something? Under state law, you have to make the respondent has the burden of proof. The respondent has to prove a substantial change in circumstance. And the protection order court has essentially complete autonomy and discretion. In your view, that provision, does that make the statute temporary? No. No? You mean the protection order temporary? No. You said the statute temporary? Yeah. I'm confused. Why would the statute be temporary? Well, no, I mean the relief, the requirement from the statute. I'm sorry. I mean, so you're challenging the statute straight on, right? We're not challenging the termination statute, Your Honor. No, no, no. You asked me about the termination statute. I'm reading, I read to you what you alleged here. I understand, Your Honor. This is in your complaint. And the case was knocked out on your complaint. I understand, Judge. But you asked me about the termination statute. Well, no, I understand that. Okay. So what's your question? My question is, maybe this gets to the merits, is your argument that the fact that there is the availability to modify. Sure. Okay. That under Rahimi, it's still different than Rahimi? Yes, Your Honor, because the order right now and the status quo, it is permanent. It's set for 40 years. But you can go in like next year, whatever, and say there's been changed circumstances. He took all these courses on aggression and whatnot. Yeah, that doesn't guarantee anything. No, I know, but it's available, right? It's available, but our position is that it does not turn a permanent order. The fact that an individual allegedly, and that's our argument, unconstitutionally denied, unlawfully denied the constitutional right, the fact that he or she has the privilege of filing a motion and bearing the burden of proving a negative, which is what the respondent has to do in a proceeding where the judicial officer hearing the matter has total discretion, that doesn't change the order from permanent to temporary just because that was at least available. Okay. Is there any harm that you allege that does not stem from the protective order? Again, I would just reiterate that. No, I'm just asking. That's a yes or no question. And then you can explain. Then the answer, if you're asking for a yes or no question, the answer is no. There's no harm that doesn't stem from the protective order. All right. Thank you. So let me ask you this. Let's say we say that Rooker-Felman isn't a bar here. Sure. It's not a jurisdiction. So you go back to the district court. Let's just say we say you can go back to the district court. What's in play? I'm sorry? What does the district court need to decide? The district court needs to decide if there's a historical analog that allows a protection order to impose a lifetime prohibition. Presumably, the district court would do that by looking at the historical record to see how long surety laws were typically enforced for, and that would be something that the government entities would need to prove. And would that not also take into account the procedures the state has made available at this one-year period? I understand your position is that those are paper guarantees or they're meaningless, but somebody may disagree with you on that, and would that part of the analysis as well? No. I don't think that would be part of the analysis unless — because that has to do with now and not history. It would be a historical analysis. You're talking about a statute that exists in 2026 and has existed — I mean, you know, it's existed for a while, but certainly not since the founding generation. I mean, I think somebody could take the position that although it's a 40-year duration, the fact that the state has allowed annual reviews and the procedures that are associated with it means that, in practice, there are ways to get relief from this that satisfy the Second Amendment. I'm not holding that. I'm just offering that as something somebody could say in response. I understand that as a response. I just don't think it makes for — Is that what you want to now litigate, these questions? I'm sorry? Is that what you want to now litigate? You want to go back to the district court and have it out on the merits of these points that Judge Pius and I have been raising here? I want to go back to the district court and I want to have a hearing on the merits applying the historical framework. I'm not sold on this — what you're saying, Your Honor, about the fact that a person can go and have the protection order terminated, but that would be ultimately for a district court judge to decide whether that's relevant or not. But we need to get to the merits. Would also be looking at issue preclusion in light of the superior court proceedings? Potentially. I don't think that applies here because the issue was slightly different, and the parties were different as well. Now I understand that doesn't necessarily apply for issue preclusion. But at least as to the protective order itself, forget — I mean, there's some consequences that come out of that, some criminal liability, potentially, that if you violate — your client violates the protective order. But as to the protective order itself and the duration, there was a Second Amendment challenge raised to that in the state trial court. Why is that challenge not issue precluded? Because it was issued to a different statute. It was issued — the argument was towards the duration statute and to the potential unconstitutionality of the duration statute, which allows an order to be made permanent. And the issue here is that we're challenging different statutes. So just to be clear, the imposition of protective order is mandatory under Washington law, but the duration statute is now what you're challenging? No. No. What are you challenging? RCW 941-040-282, as Judge Paez stated, 941-800. Right. And 942-G8, which is a federal statute. I understand the federal statute. But why wasn't the state statute part and parcel of what the district — I mean, what the Superior Court was looking at? The Superior Court did look at it and then it rejected the argument. The duration statute, right? Right. So, I mean, that went back to my question about issue preclusion. The Second Amendment was squarely presented in the state court, right? It was presented. Yes, it was argued in state court. Yes, Your Honor. But it was to a different statute. I think that's the point I'm trying to make. And also — What's the difference? I'm a little confused on that. Well, the duration statute really talks about the protection order as a whole, right? So the relief we were seeking there is that the protection order as a whole was going to only be one year if we had gotten our way. But here we're not talking about the protection order duration in any way, shape or form anymore. We're talking about the potential unconstitutionality of the application of the firearm statutes that prohibit the firearm possession. To recipients of protective orders. Well, no. Specifically to Mr. Niles. I understand. I understand. So with that, Your Honor, do I have two more minutes? Well, we'll give you two more minutes. So why don't we hear from your opposing counsel here. So I guess we'll hear first from the Washington AG's office. All right. Good morning. May it please the court. Sarah Smith Levy for the Attorney General of Washington. The district court dismissed this case for lack of jurisdiction under Rooker-Feldman, and this court should affirm that decision. The Rooker-Feldman doctrine prohibits litigants who lost in state court for re-litigating their cases by suing in federal court. Niles brings a federal court challenge to a state court's decision to enter a 40-year protective order against him because it prevents him from possessing firearms while the order is in place. The district court held it lacked jurisdiction over this de facto appeal, and this court should affirm. The Rooker-Feldman doctrine prohibits federal courts from reviewing state court judgments. This means that a state court loser who alleges they've been injured by a state court judgment and who asks a federal court to reverse that judgment cannot bring a case. So as I read the complaint, they're not asking for that. You're right, Your Honor. They're not asking to reverse the judgment. They're not asking us to review what the state court did. So Rooker-Feldman is to declare the statute unconstitutional as applied to Mr. His 40-year. Certainly. So what we have here is a de facto appeal. And here, Niles is challenging two state laws as they apply to him, but both are barred as improper de facto appeals. Really, the entire- But would it be different if he brought a facial challenge? It would be different if he brought a facial challenge, but for the reasons that opposing counsel conceded, that claim would likely fail under Rahimi. And really, the entire premise of Niles's case is that he has been injured by the state court's decision to enter a protective order that prevents him from possessing firearms for 40 years, and that a federal court should basically overturn that decision. That's the rub, though, right there. He says, no, I don't want to leave alone the state court decision. I would like you, the Court of Appeals, or ultimately the district court, to make a bar is unconstitutional. So that's what he's asking. But then he says, as to him. Yes, Your Honor. So what we need to look at here is the nature of the relief sought. The practical effect of the relief that Mr. Niles is seeking here today would be to say that the challenged laws can't lawfully apply to him for the duration of the protective order. And he concedes that under Rahimi, he can be temporarily disarmed, and only complains that 40 years is too long as a matter of law. But he already litigated and lost this exact issue before the state court. And any relief here would effectively reverse the portion of the order that prohibits him from possessing firearms for that 40-year period. Is that more like a preclusion order, a preclusion issue? The issues definitely do overlap. Rooker-Feldman doesn't really, you know, this is separate from preclusion matters. Yeah, they overlap, I would say. They have some similar flavors to them. But that being said here, we're arguing that what Mr. Niles is effectively seeking is review of the state court's judgment rather than he's already litigated these issues. We shouldn't take him for, you know, what he alleges in his complaint? I think this court can take it for what he alleges in his complaint. And this court, you know, Rooker-Feldman can apply regardless of what the exact underlying reasoning of the state court was. What matters is, is the state court loser here asking for what is effectively review, appellate review of the state court's judgment? And that is what we have here. You know what confused me a little bit is I didn't see the state had even invoked the 11th Amendment or ex parte Young. And if you look at the attorney general's authority, as opposed to the county prosecutor or the judge entering a contempt order, it was certainly unclear to me whether there's any connection between this defendant and this claim. What's the state's response to that? So I think there's two responses to that. The first is that, you know, the attorney general's entitled to be heard, you know, on challenges to the constitutionality of state law. Um, the second thing I would say is that this court is here on de novo review, so it can affirm for any basis that's supported by the record, even if it isn't the basis that the district doesn't really explain to me why the attorney general would just fly by what I thought was a pretty significant legal issue here. So you're basically saying, well, the attorney general is making himself a party representative of the state? Is that what's happening here? I think that's right, Your Honor. Well, you can always waive the 11th Amendment. And we can always waive the 11th Amendment. Yes, you can always waive the 11th Amendment. But I haven't seen it done by this state attorney general very often. So that's why this case is a little confusing, having the attorney general as a defendant here. I understand, and we'll hear from the United States as to their situation. So is the difficulty we have, of course, is what's a de facto appeal? And what is, in fact, not, as counsel says, I don't, I'm not asking you to do anything with the state court protective order. It might be a collateral consequence that if you declare it unconstitutional, then that protective order would fall by the wayside. But so where do we draw the line between I'm not really challenging the order and your claim that it's a de facto appeal of the order? Yes. So to determine whether a case presents a de facto appeal, we look to whether the state court, loser, the federal plaintiff, if they are alleging that they've been harmed by an erroneous legal ruling of the state court that either withholds a benefit, imposes a detriment, or otherwise injures them. And here, Mr. Niles is pretty clearly stating that he's been, he's been harmed by the state court's judgment because it prevents him from possessing firearms for the 40-year period. And I asked him, do you have any harm that doesn't stem from the state court order? He said no. I think that's right, Your Honor. The two statutes that he's, the two state statutes he's challenging here apply only by virtue of the state court's judgment. They wouldn't independently apply to him absent the order. And that's really what makes this exactly the type of collateral attack that Rooker Feldman prohibits. What about the line of cases saying that people can bring independent challenges like Maldonado? Yeah. So I think two thoughts, maybe more than two thoughts on that. So the first thing is what I was just discussing with Judge McKeown, which is that these statutes only apply to him by virtue of the protective order. So there really are no independent claims possible here. And then the second point I'd like to make is that this case is really actually pretty distinct from Maldonado. I would agree that on the cases faced, they appear to be pretty similar. But this case and Maldonado are actually quite different. In Maldonado, he had never raised the constitutional claims in state court. He didn't challenge the underlying state court judgment. And he was kind of challenging ongoing continued enforcement of a law years later after the state court's judgment had been entered. And so by contrast, this case, Mr. Niles isn't arguing that someone committed a wrongful act in securing the state court's judgment or that a statute is being illegally or wrongfully enforced at this time. Instead, he really just disagrees with and seeks reversal of the state court's decision. I mean, isn't his complaint seeking to be challenging the continued enforcement? Isn't that part of what he's arguing or really is what he's arguing? I'd agree it's what he's arguing, but that's exactly what the state court, that was the exact issue before the state court in deciding to issue the protective order. He made some distinction. Well, the state court protective order is under one statute, although he said at one point it was under two, and that this is a challenge to a different statute. So that gets him out of Rooker Feldman land. I think it's really a distinction without a difference here, Your Honor. If you look to what the state court actually said, the state court very clearly understood that what was being challenged was the duration of the order and saying that it was unconstitutional of the second amendment. The state court understood the position that was being presented to it. It considered it and rejected it. But really, the state court knew what was being asked of it and decided to reach a contrary decision. Would that issue be more appropriately determined on a remand on issue preclusion as opposed to a decision here on Rooker Feldman? No, Your Honor. I think this court can reach, can resolve this on the jurisdictional Rooker Feldman grounds. Unless there are any further questions, the district court correctly held this case is barred by Rooker Feldman, and this court should affirm. Thank you. Okay, thank you. We'll hear from the United States. Good morning, Your Honors, and may it please the court. Sean Janda for the federal government. Two and a half years ago, a Washington state court entered a domestic violence protection order against plaintiff. After concluding, the plaintiff represents a credible threat to the safety of his now former wife. I find plaintiff's claim against the federal government a little bit hard to parse in this case, but to the extent that his claim is that the federal prohibition on possessing firearms cannot constitutionally be applied to him today as a result of that protection order, I think that claim is clearly foreclosed by Rahimi. We're now two and a half years after the protection order, and there's been no argument in this case that there's any meaningful distinction between the two plus year term of the protection order in Rahimi and the two and a half years that we've had since the protection order issue in this case. Well, I think if I understand his argument, his problem is it's not two and a half years. That's actually the lag time between the order and now. It's the life, in effect, lifetime duration. So I think that then gets if that's his claim that it would be fine to enforce 922 G8 against him today, but it would not be fine to enforce 922 G8 against him in five years and 10 years and 15 years. I think that's the rightness problem. And so depending on exactly how he's framing his claim, and I'm not entirely sure how he's conceiving of the claim. But if the claim is that it's going to become unconstitutional at some point because of the duration of the order, then I just don't think that claim is ripe. And I mean, it seems like he's subject to it now. So there may be merits responses to it. But I mean, we let people come in and challenge a lengthy criminal sentence and say, I'm subject to this long sentence. I think it should be shorter, even though they concede they're going to be in prison for a certain period of time in the short term. Right. So I think the key difference there, Your Honor, is that the state court order is not subject to review in this court. I mean, that's the Rooker-Feldman issue. So the question, just focusing on his claim against the United States, the question is whether the United States or the attorney general can enforce 922G8 against him. And to the extent that the court is sort of evaluating that question as of today, whether as of sort of the time of the court's decision, 922G8 can be enforced against him. I think that claim is ripe. There's just a big Rahimi problem with it. To the extent that the claim is that at some future point, it will sort of no longer be permissible to enforce 922G8 against him on the basis of this particular protection order, I think that's the ripeness problem. So you say, OK, he's overcome ripeness, at least to some degree. If that's the case, why can't he bring his case in federal court in terms of the challenge to the statute? So I think if you get past the ripeness issue, then I think exactly how you would resolve that claim on the merits, and we agree that the court could get to the merits at that point, would depend on whether you're thinking about sort of today, whether the claim was about whether we could enforce the statute today or whether it's about sort of in the  And so as of today, he would say, well, let me go back and argue that on the merits. I mean, Rahimi's a merits issue. It's so let me go back. It's not a Rooker Feldman issue is the way he frames it.  And the court could, I mean, in its discretion, say that the Rooker Feldman holding with respect to the claim against the United States is wrong. And we agree with that. And in other words, you're saying there's not a Rooker Feldman problem with his as applied challenge with respect to the claim against the United States, which is the only claim we've we've taken a position. I don't think you can talk to the state. Yeah, we do not think there's a Rooker Feldman problem with respect to that claim. I think Mithras, for example, sort of draws the distinction between challenges to the effects of a state court order and challenges to the state court order itself. And so it's certainly true that sort of the state court order is a necessary predicate for the G8 enforcement. But I think to the extent that he wants an injunction prohibiting the attorney general of the United States from enforcing G8 against him, that's not a prohibited appeal of the With respect to the what's on appeal to us. The position of the United States is that the district court should be reversed and the case should be remanded to the district court. No, although I don't think that would be wrong. We do think the district court's wrong about Rooker Feldman. OK, we think that it would be appropriate for this court to say, again, sort of depending on exactly how his claim is framed, that the claim is not right for that fails on the merits. I mean, applying where he me sort of to the circumstances as they exist today, I think is a pretty straightforward legal right as to the future part of this. When does it become right? But he'll he'll do this again in a year and we'll say, well, it's been three years, so it's not quite right yet. Getting riper. It's getting riper. Yeah, so I think it's ripe when he when he thinks that his claim is sort of that we could not enforce the statute today. I think it's I think he's there on that. I mean, so if that's what his claim is, if his claim is that the two and a half year order is too old, then we don't think there's a right to this problem. But that's just foreclosed by Rahimi. And so I think whenever he decides, I don't know what he thinks about whether it's foreclosed by Rahimi, but we think it's fine for him to come in and say, you cannot enforce it against us today. You cannot enforce it against me today. The complaint is limited in its detail. But what I understand that claim to be essentially is that there's a federal prohibition that's resting on a state protective order. But the state protective order is effectively permanent. People may disagree with that and that the procedures for trying to make it not permanent are not good enough. Therefore, the federal the federal prohibition can't rest on that. And that violates Rahimi. Yeah, I mean, so let me say two things about that. I mean, number one, just sort of taking on its own terms, the 40 year order and things brief explains that the key point in Rahimi is that you have the tying of the judicial determination of a credible threat with with a relatively temporary prohibition. And I think here taking Washington law as a whole, he has the opportunity to get every year a judicial determination or potential judicial determination about whether he continues to pose a credible threat to his ex wife. And, you know, I don't know how any details of this not matter, like, you know, exactly how the state procedure functions and who bears the burden and what one needs to show. Because, I mean, you can imagine a world where it's not this law, but somebody would say, well, you can come back every five years and the burden is to show beyond a reasonable doubt that, you know, beyond a shadow of a doubt that you're not dangerous. And someone could respond to that and say, well, that's just too onerous. And and perhaps the arguments being made here, I don't know what the answer to that is. That would have to that that's the merits question, as I understand it. Yeah, I mean, at some point that may sort of become a good argument. I don't think he's developed any argument that the Washington scheme is that sort of particularly onerous of scheme. I mean, he can go back every year. It's a preponderance burden. And again, if he goes back to the state court and the state court says, you know, I no longer think you're a credible threat, but I'm going to exercise my discretion to leave the order in place or something like that. Maybe he then has a federal claim that's a better federal claim than the one that he has right now. But I think all of that is very speculative. And so to the extent that his claim, again, sort of turns on what could happen or what might happen in the state court proceedings, there's the ripeness problem to the extent that his claim is that, again, as we sort of all stand here, sit here today, it would be unconstitutional to enforce jade against me. I think he has a problem. And so on that point. If, you know, the federal government says no, Ricker Feldman, but decide the Rahimi. But typically, if we were going to decide it on the merits, we would go for the non constitutional route, which would be preclusion, not deciding Rahimi on a constitutional basis under the Second Amendment.  So the court, obviously, the preclusion issue hasn't been briefed here. I don't know how Washington state law would treat. That's why a remand would be appropriate, wouldn't it? If the court wanted to say, like I said, there's no worker problem problem with respect to the claim against us and remand. We don't think the court has to do that. We think it would be sort of perfectly appropriate for the court to apply Rahimi to the extent that his claim is about today. I mean, I think it's a pretty straightforward application. Let me ask you a question. I don't think I asked the state, but can you split these claims? In other words, is it possible to say, well, your claim under the Washington law. Is, in fact, a Rooker Feldman type claim, whereas under federal law, the 922, it's not. Is that possible or can you not split these? So we've only taken a position on the federal claim. I don't sort of have a good argument for you about why the Washington claim should be treated different than the federal claim. I can tell you why we think the federal claim doesn't run into a Rooker Feldman problem. But obviously, I think there's a tighter connection between his challenges to the Washington statutes and the state court order that's not present with respect to the federal claim. And so maybe the court could think that there's a difference there. But I think applying this court's precedents to the federal claim, we just don't see the Rooker Feldman problem. There are no further questions. Okay. Thank you, Mr. Chanda. Thank you. I want to address the United States argument real quick. First, specifically, the point that counsel made about the ability to go back to court and ask for termination on a yearly basis. And if the termination is denied, then that's essentially a finding that the individual continues to represent a credible threat. That is not what the state statute requires. The state statute does not require the court to deny motion to terminate because it finds that the individual has continued to be dangerous or because the individual continues to represent a credible threat. Those are not elements of the statute. So we can't say that if he goes to court and gets denied, that means he's a credible threat. Those aren't tantamount findings. And with regard to the attorney general's argument with Rooker Feldman and the fact that this is a de facto appeal, this is not a de facto appeal because the question to be decided, which is the historical analog, does not require the district court to second-guess the state court in any way, shape, or form. Those are completely different questions. And whether a historical analog exists has nothing to do with what the state court decided when it issued the protection order. Didn't the state court have to decide that there was not a constitutional infirmity with the imposition of the statute? No, that's not part of the initial decision to issue the order. It might not be the initial, but then it's part of the initial proceedings that are at issue on appeal. We're not making... You raised it in the motion to adjust. To adjust, to modify. Correct, Your Honor, but we're not raising that on the federal... We're not saying that the Superior Court erred on that issue in federal court. We don't care what the state court... I know you don't care, but if the Superior Court... If there was a constitutional problem, then the Superior Court couldn't have entered this order, right? I think that's a little presumptive. Somebody would have had to have raised that. And you raised it. I mean, when it came back, it's all in the briefing about the Second Amendment and Rahimi and the distinctions between Rahimi and permanent. That's all raised in the state court, right? As the challenge was at the time to the duration statute. Correct, yes. Okay, okay. I do want to take... You're a little over your time, but go ahead and make your final point. Thank you, Your Honor. I just wanted to touch on something Judge McAllen said to the Attorney General's office. On one of your questions, one of the premises was that if the statutes that were challenging are invalidated, the protection order will fall by the wayside. That is not correct. If the statutes are only validated, the protection order continues to be valid for the next 40 years. Nothing changes about the protection order. And I think that's an important point. That makes no sense to me. That makes no sense to me. That makes absolutely no sense, I'm sorry. But we're not validating the protection order. I know they're not. But if I say this protection order says, here's the parameters of the protection order, and you may not have firearms for this period under this statute. And then that statute is invalidated. Well, that portion of the protection order goes by the wayside. That portion, yes. But all the other terms of the protection order would still remain. They would not be voided because of...  Don't contact or various things. Yes. So with that, we ask the court to reverse and remand. Thank you. Okay, thank you. We thank all counsel for the briefing and argument. This matter is submitted. That concludes our calendar for this morning. We'll stand in recess until tomorrow. All rise.
judges: McKEOWN, PAEZ, BRESS